COMPANIA MEXICANA DE CEMENTO PORTLAND v. WAITE et al.

(District Court, E. D. Pennsylvania. May 17, 1912.)

No. 19.

1. PRINCIPAL AND SURETY (§ 6*)—LANDLORD AND TENANT (§ 5*)—LEASE—CONSTRUCTION.

An instrument with reference to a Mexican cement factory was described as a memorandum contract of lease between plaintiff and defendant W., and provided that plaintiff gave and W. accepted on lease a certain described cement factory on specified terms, with the right to him to purchase the same during the continuance of the contract for $500,000 cash. A subsequent clause provided that, in the event of W. not executing the public instrument (converting the memorandum into a contract of record), he would forfeit to plaintiff by way of stipulated damages $5,000, to be guaranteed either by cash deposit in a specified bank or by bond. A bond was executed and delivered providing that, if

W. did not live up to the lease, he would forfeit $5,000 Mex. An extension of time thereafter having been applied for, it was granted on delivery of an additional bond of $5,000, which recited that it was to secure a 60-day extension, and, if W. carried out the principal contract within that time, the $5,000 bond was to be considered as a partial performance of an obligation to give a $15,000 bond required by the contract to secure performance thereof. *Held*, that the contract was a lease with an option to purchase, and that the signer of the bond other than W. was a surety, and not a guarantor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 6; Dec. Dig. § 6;* Landlord and Tenant, Cent. Dig. §§ 3–12; Dec. Dig. § 5.*]

2. DAMAGES (§ 79*)—BONDS—LIQUIDATED DAMAGES OR PENALTY.
    It being impossible to determine the amount of actual damages sustained by W.'s failure to comply with such lease and option contract, the amounts specified by both bonds would be considered as liquidated damages, and not a penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 164–169; Dec. Dig. § 79.*]

At Law. Action by the Compania Mexicana de Cemento Portland against Horace A. Waite and another. On motion by defendant Whitney for judgment notwithstanding a verdict for plaintiff. Denied.

M. J. O'Callaghan, of Philadelphia, Pa., for plaintiff.
Charles Biddle, of Philadelphia, Pa., for defendant.

J. B. McPHERSON, District Judge. This is a suit upon two bonds, each for $5,000 Mexican currency, signed by the two defendants. Waite was not served with process, and the action has proceeded against Whitney alone. The bonds were given under the following circumstances:

In 1902 Waite was either promoting, or was about to undertake, a cement-manufacturing enterprise in Mexico. On July 8th of that year he entered into the following contract with the plaintiff company, the owner of the plant:

"Memorandum of contract of lease, which is arranged between the 'Compania Mexicana de Cemento Portland, S. A.,' and Mr. Horace G. Waite.

"(1) The Compania Mexicana de Cemento Portland, hereinafter denominated 'The Company,' gives, and Mr. Waite takes on lease, the Buena Vista cement factory that is established on the lands of the hacienda of Denyi, district of Tula and state of Hidalgo, the lease covering the buildings, machinery, utensils, and appliances in accordance with the inventory hereinafter referred to. The stock of cement whether manufactured or in process of manufacture, of coal, clay and other raw material existing in the factory at the time when delivery is made to Mr. Waite, will remain the property of the Company, but nevertheless Mr. Waite may acquire such raw material at cost price, paid in cash.

"(2) The lessee will be allowed to make free use of the water of the hacienda and of the lands adjoining the factory, on the understanding that these lands cover an area of one fanega and are those shown in the plan hereunto added. He will likewise be allowed to occupy with new buildings, 20 hectares more, provided that they are not in such places as to interrupt the service of the haciendas. It is understood that the use of the water will be subject to the condition that the lessee will return said liquid to the places and levels at which they are now taken by the haciendas of Jaso and Denyi

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the irrigation of their lands, and that the use of these waters by the lessee shall in no way disturb or interrupt the agricultural operations of the haciendas.

"(3) The lessee will be allowed to dispose of the stock of raw material now in the haciendas of Jaso and Denyi as far as may be necessary for the manufacture of the cement and for this purpose he will have power to make use of the roads and aqueducts that are established on said properties, and also established at his own expense, the aqueducts, railroads or other means of transportation that he may consider desirable. He will also have power to construct the dams and other works that may conduce to the increase of hydraulic power in any part of the haciendas, provided that they do not interrupt the present irrigation service of the properties or cause any disorder or disturbance in the management of the same.

"(4) Both the cement factory with its buildings, machinery, utensils, etc., as well as the waters and lands referred to in the first and second clauses, will be delivered to Mr. Waite three months after the date of this memorandum; but should the lessee so prefer and give a written previous notice to the Company, such delivery may be delayed for another month. The delivery will be subject to the inventory which is added to this memorandum and to the increase or decrease that may take place up to the day of delivery by reason of the operation of the factory subsequently to the date on which said inventory is taken.

"(5) The term of this lease shall be of eight years from the date on which the factory is delivered to the lessee. The three first years of said term shall be binding on both parties, and Mr. Waite will have power to consider the contract rescinded within the five years following provided that he notifies the Company thereof, at least one year previously to the cancellation.

"(6) The lessee shall pay no rent whatever for the three months following the date on which he receives delivery of the factory and its dependencies. Once that period has elapsed the rent shall be at the rate of thirty-six thousand dollars per annum, payable at the rate of three thousand dollars at the end of each month. As an exception it is provided that the rent for the first half year will be payable at the end of every three months and at the rate of nine thousand dollars per quarter.

"(7) Should Mr. Waite default on the payment of the above stipulated rent for two consecutive months or for one of the three monthly periods mentioned in the preceding clause, the Company will have power to hold the present contract rescinded.

"(8) Mr. Waite binds himself to invest in the repairs to the buildings which at present contain the factory, and in the erection of new machinery, buildings, additional motive power and means of communication, a capital of not less than thirty thousand dollars, making an investment within the year following the date on which said factory is delivered to him. The lessee shall prove by means of invoices, pay rolls, etc., that during the first six months of the stipulated term, he has invested at least fifteen thousand dollars, and he will prove by the same means, that during the second six months, he has employed in the objects above indicated, the balance necessary to complete the sum of thirty thousand dollars referred to. Nevertheless, should Mr. Waite desire, instead of proving the investment of the above mentioned sums, he may deposit them in the Banco Central Mexicano at the disposal of the Company, within the periods above mentioned. He may likewise give the Company a bond for the above amounts, executed by the American Surety Company or by another person that is satisfactory to the Company.

"(9) All the works and improvements that may be executed by Mr. Waite in the present machinery and buildings as delivered to him under the annexed inventory will remain for the benefit of the Company, without said gentleman having any right to demand any compensation whatever. On the expiration of this contract, Mr. Waite will have power to withdraw the engines and machinery whose absence will not imply any injury or deterioration in the factory or machinery which the Company is to receive on the expiration of the contract. The machinery that he may erect whether as an extension or enlargement of the present plant or whether as a fresh plant will remain the property of Mr. Waite, and he will have power to withdraw it on the expiration of the present contract; but the new building which he may erect

will remain for the benefit of the Company without the latter having to pay any compensation whatever. All questions that may arise in connection with the stipulations of this clause will be decided by two experts who will be appointed one by each side and by an umpire who will be designated by them in the event of discord. Should either of the interested parties not appoint its expert, or should the latter not designate the umpire within a term of eight days, either of the parties may apply to one of the civil judges of the city of Mexico, for the appointment of the expert that is wanting.

"(10) As long as this contract remains in force, Mr. Waite will have a right to purchase the haciendas of Jaso and Denyi and the cement factory of Buena Vista, with its machinery and everything that 'de facto or de lege' may belong to any of them, just as they have been acquired and are now possessed by the Company, for the sum of five hundred thousand dollars cash. Mr. Waite will respect the contracts of lease or any others that may have been executed by the Company in connection with the operation of the haciendas, on the understanding that none of them will be for a longer term than five years from this date, and that the properties, etc., produce at least twelve thousand dollars net per annum.

"(11) It is understood that the rent stipulated in clause 6, the price specified in clause 10, and generally speaking, all payments that are to be made by Mr. Waite, shall be paid to the Company without any deduction of any kind whatever, and that therefore, said gentlemen will have to pay all kinds of taxes under the present or future laws, even though such laws may provide for their payment by the Company.

"(12) On the expiration of the lease, Mr. Waite will return the factory in accordance with the inventory that under the conditions of clause 1 is added to the present contract. He will likewise deliver the new buildings that he may have erected and the improvements that he may have made in the present machinery, and that cannot be separated without injury to the same, as well as the utensils and other fittings that are entered in said inventory, or in good working order and without any further deterioration than that caused by natural wear and tear, for which reason Mr. Waite will take care to make at his own expense, the repairs and maintenance work that may be necessary. All questions that may arise in connection with the delivery of the machinery and improvements made by Mr. Waite, will be decided by experts in the same manner as provided in clause 9.

"(13) In order to guarantee the obligations which Mr. Waite assumes under the present contract, Mr. Waite will hypothecate all the new buildings and new machinery which he may erect, and at the time of converting this memorandum into a public instrument, he will give the Company a bond for the sum of fifteen thousand dollars. Said bond will contain a waiver of the benefits of any preference whatever as well as of division with other creditors. Mr. Waite may at his option, substitute said bond with a deposit of the above mentioned sum of fifteen thousand dollars in the Banco Central Mexicano, at the disposal of the Company in case of need. Said deposit will be refunded to Mr. Waite after the expiration of the contract, provided he has not incurred any liability through nonfulfillment of the same. Should Mr. Waite invest a sum of not less than forty-five thousand dollars in the objects referred to in clause 8, as proved by the means laid down in the same clause, he will have a right to withdraw the deposit referred to in this clause or to have the bond canceled that is also referred to. Unless the bond is given or the deposit made, this agreement will have no binding effect on the Company.

"(14) The present contract will be subject to the approval of the general meeting of shareholders of the Compania de Cemento Portland, only as far as it applies to the promise of sale which is stipulated in clause 9, and it will be firm and valid from this moment, as far as regards the lease, because the board of directors is sufficiently authorized to execute all kinds of contracts, under the by-laws of the Company.

"(15) In the event of Mr. Waite not executing the public instrument into which this contract is to be converted, for any reason, he will forfeit to the Company by way of stipulated damages, the sum of five thousand dollars, and in order to guarantee that sum, he will within five weeks from the present date, either deposit the same in the Banco Central Mexicano or else give bond for the same to the satisfaction of the Company. Should Mr. Waite

allow the stipulated term to elapse without making the deposit or executing the bond herein referred to, the present memorandum will be held null and void. The deposit will be returned to Mr. Waite or the bond cancelled, on the execution of the public instrument in accordance with this memorandum.

"The present memorandum is signed in the City of Mexico on the 8th of July, 1902, before the notary, Lic. David Lazo, who will convert it into a public instrument and insert therein all the other clauses, stipulations and waivers that may conduce to the better understanding and more exact fulfillment of the stipulations of this memorandum. The expenses of the deed, its certified copies and the taxes that may be payable by either side or on the transaction recorded shall be equally divided.

"This memorandum will be converted into a public instrument before the factory is delivered to Mr. Waite, always provided that this gentleman has given the guarantee referred to in clause 13 within the term therein stipulated."

[1] This is essentially a lease with an option to buy, under which Waite was to take possession on October 8th. The contract became at once a binding obligation, but the parties contemplated that it should be "converted into a public instrument before the factory is delivered": and this I understand to mean that it was to be put upon record, so that certain legal consequences should follow under the Mexican law. This conversion was evidently regarded as important, for clause 15 was inserted to insure its performance. The clause may be repeated in this connection:

"(15) In the event of Mr. Waite not executing the public instrument into which this contract is to be converted for any reason, he will forfeit to the Company by way of stipulated damages the sum of $5,000, and in order to guarantee that sum he will, within five weeks from the present day, either deposit the same in the Banco Central Mexicano, or else give bond for the sum to the satisfaction of the Company. Should Mr. Waite allow the stipulated term to elapse without making the deposit or executing the bond herein referred to, the present memorandum will be held null and void. The deposit will be returned to Mr. Waite or the bond cancelled on the execution of the public instrument in accordance with this memorandum."

Under the option given by this clause, the first bond in suit was executed within the five weeks, but the principal contract was never converted into a public instrument, and indeed, after some further transactions between Waite and the Company, which will be referred to in a moment, he abandoned the enterprise, and apparently returned to the United States. The bond is as follows:

"Philadelphia, Pa., July 31st, 1902.

"Gentlemen: In accordance with the contract drawn July 8th, 1902, before Nortary Public Lic. David Lazo between the Compania Mexicana de Cemento Portland of the state of Hidalgo, Mexico, and Horace G. Waite of New York City, whereby Horace G. Waite agrees to rent for the term specified the property of said Company, and in accordance with clause 15 of said contract of lease, whereby said Waite agrees to forfeit the sum of five thousand dollars ($5,000.00) Mex. should he not live up to said lease, and in accordance with the authorization of the Banco Central Mexicano of the City of Mexico, the duly authorized agent of said Compania Mexicana de Cemento Portland, said authorization being given in a letter of July 14th, 1902, whereby the personal guarantee of Horace G. Waite endorsed by the guarantee of J. P. Whitney, 227 South Front Street, Philadelphia, Pa., shall stand in lieu of said five thousand dollars ($5,000.00) Mex. required in clause 15 of said contract of lease: Now therefore, the said H. G. Waite and J. P. Whitney bind themselves in the sum of five thousand dollars ($5,000.00) Mex. said sum to be forfeited in case said contract of lease is not carried out.

"Though this bond will be given in duplicate, one to be forwarded by mail to the Banco Central Mexicano, the other to be given to the Park National Bank of New York, the authorized agents of said Banco Central Mexicano, it is understood and agreed that the guarantee and obligation shall be limited to the sum of five thousand dollars ($5,000.00) Mex.

"In witness whereof, the parties have hereunto set their hands and seals this thirty-first day of July A. D. 1902.                    Horace G. Waite.
                                                              "John P. Whitney.

"Subscribed and acknowledged before me this 31st day of July, 1902.
                                               "Arnold Katz, Notary Public.
"My commission expires January 2nd, 1905.
"Legalized before Mexican consul at Philadelphia."

The importance of clause 15 is apparent. If it should not be complied with, the whole contract was to become null and void.

[2] The question for decision now is whether the sum for which this first bond was given is liquidated damages or merely a penalty. Some contention was made by the defendant that he was only a guarantor, but this I think does not need discussion. In my opinion he was a surety, and is directly and primarily liable, not secondarily, as a guarantor would be, and the extent of his liability is the only point for consideration. Neither do I think it important to determine whether the bond is a Mexican contract or a Pennsylvania contract. The agreement of July 8th was undoubtedly a Mexican contract, and the argument is not without force, that the bond should also be so described; whether it be regarded as an undertaking merely incidental and subsidiary to the principal contract, or the test be applied, that Mexico was the place of performance. But I do not decide this question; for, under the law of either country, it seems to me that the sum has been made liquidated damages by the clear intent of the parties. If this was their intent, it must be enforced. The bond refers to clause 15, and declares that "Waite agrees to forfeit the sum of $5,000 Mex. should he not live up to said lease," including thereby, of course, the fifteenth clause thereof, and then goes on to say distinctly that it is to "stand in lieu of said $5,000 Mex. required in clause 15 of said contract of lease." When, therefore, the bond further declares that Waite and Whitney bind themselves in the sum of $5,000 Mex., this sum to be forfeited "in case said contract of lease is not carried out," it means this much at least as it seems to me, even if it means nothing more—in case the fifteenth clause is not carried out. The final paragraph is merely precautionary. It recites that the bond is to be given in duplicate, and therefore declares that the obligation is to be limited to only one sum of $5,000. As already stated, Waite never converted the contract of July 8th into a public instrument, and in other respects did not live up to the lease; and, as the bond by its own terms became forfeited by this default, the question simply is whether the sum named was stipulated damages or merely a penalty. Without discussing at length this much controverted question, it is my opinion that either under the law of Mexico or the law of Pennsylvania the whole sum became due and payable. Clause 15, to which the bond expressly refers, declares in unambiguous terms that the amount is to be "stipulated damages," and all the circumstances of the transaction point to the conclusion that the par-

ties intended this result to follow. The difficulty, if not the impracticability, of assessing the actual damage, is apparent, and the courts have always regarded this fact to be of great importance when they are considering the meaning of a particular agreement.

The second bond, dated October 3d, refers specially to clause 13. It may also be repeated here for convenience:

"(13) In order to guarantee the obligations which Mr. Waite assumes under the present contract, Mr. Waite will hypothecate all the new buildings and new machinery which he may erect, and at the time of converting this memorandum into a public instrument, he will give the Company a bond for the sum of fifteen thousand dollars. Said bond will contain a waiver of the benefits of any preference whatever as well as of division with other creditors. Mr. Waite may at his option, substitute said bond with a deposit of the above mentioned sum of fifteen thousand dollars in the Banco Central Mexicano, at the disposal of the Company in case of need. Said deposit will be refunded to Mr. Waite after the expiration of the contract, provided he has not incurred any liability through nonfulfillment of the same. Should Mr. Waite invest a sum of not less than forty-five thousand dollars in the objects referred to in clause 8, as proved by the means laid down in the same clause, he will have a right to withdraw the deposit referred to in this clause or to have the bond cancelled that is also referred to. Unless the bond is given or the deposit made, this agreement will have no binding effect on the Company."

It will be seen that this bond of $15,000 was to be given at the time when the instrument of July 8th should be converted into a public instrument, or, at his option, Waite might deposit $15,000 in the Mexican Central Bank as a substitute for the bond. This clause also was evidently regarded as of vital importance; for, if the bond should not be given or the deposit made, the lease was to be null and void. When, therefore, difficulties arose, and Waite was unable to carry out the contract of July 8th, which involved the giving of the bond of $15,000 just mentioned, and an extension of 60 days was agreed upon from October 8th, the date when possession was to be delivered, it was required that, in order to obtain that extension, Waite should give an additional bond of $5,000 Mex. The bond itself declares the object to "secure a sixty days' extension and postponement of all the dates of payment of further sums and dates of acceptance of the property as specified in said contract of lease." If within that additional period Waite should carry out the principal contract (which, I repeat, involved the giving of the bond provided for by clause 13), it was agreed that the $5,000 bond of October 3d should be considered as a partial compliance with that clause, and that the amount of the bond originally stipulated for should be reduced to $10,000. This being the situation on October 3d, the second bond in suit was given, and Waite and Whitney bound themselves thereby in a further sum of $5,000 Mex., "said sum to be forfeited in case said contract is not carried out." The bond is as follows:

"October 3, 1902.

"To the Banco Central, City of Mexico.

"Gentlemen: In accordance with the contract of lease drawn July 8th, 1902, before Lic. David Lazo between the Compania Mexicana de Cemento Portland, of the state of Hidalgo, Mexico, and Horace G. Waite, of New York City; and in accordance with clause 13 of said contract of lease whereby said Waite agrees to deposit on or before October 8th, 1902, a bond of $15,000, Mex. value; and in accordance with a later agreement entered into

between Signor Pimentel representing said company and C. W. Whittemore representing said Waite, this later agreement modifying the terms of said clause 13 in that it was agreed that said Waite might by depositing an extra bond of $5,000 Mex. secure a sixty days extension and postponement of all the dates of payment of further sums and dates of acceptance of the property as specified in said contract of lease, the above named bond of $5,000 being considered as a partial payment on said bond of $15,000 mentioned in clause 13, and it being understood that the terms and conditions of said contract are in no way altered or affected except as allowing said Waite the further time of sixty days to fulfill the requirements of said contract; and whereas the Banco Central of the City of Mexico is the duly authorized agent of said Compania Mexicana de Cemento Portland.

"Now, therefore, the said Horace G. Waite and J. P. Whitney bind themselves to the sum of $5,000 Mex. to said Banco Central, said sum to be forfeited in case said contract is not carried out.

"In witness whereof, the parties have hereunto set their hands and seals this 3rd of October, 1902.                                Horace G. Waite.
                                                        "J. P. Whitney.

"Subscribed and acknowledged before me this 3rd day of Oct. 1902.
                                        "Arnold Katz, Notary Public.

"My commission expires January 2nd, 1905.
"Legalized before Mexican consul at Philadelphia."

As is plainly apparent from the recitals in the bond, the contract referred to is the agreement of July 8th as modified by the extension agreement; and, whether it be a Mexican contract or a Pennsylvania contract, I reach a similar conclusion concerning its effect, as in the case of the first bond, namely, that the sum stipulated was intended to be liquidated damages, and not merely a penalty.

. It follows, therefore, that the directed verdict, for which each party asked me to give a binding instruction, should stand. Judgment may be entered thereon in favor of the plaintiff, and to this order for judgment an exception is sealed in favor of the defendant Whitney.